NO.MO-07-CR-119   MO-10-CV-044

FILED

APR **30** 2010

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

United States District Court

Western District of Texas - Midland Division

MO:O7-CR-119

Crystal Munoz,

Petitioner,

vs.

UNITED STATES OF AMERICA

Addendum for Writ of Habeas Corpus

motion to vacate sentence 2255

The Memorandum of Crystal Munoz an argument in support
of her writ of habeas corpus, filed with the District Court
on 4-16-2010.

I

## INEFFECTIVE ASSISTANCE OF COUNSEL

Counsels performance fell below an objective standard
of reasonableness.  Counsel failed to argue effectively regarding
the conspiracy to possess with intent to distribute controlled
substances.  Absent an agreement to commit the act which
is the object of the conspiracy, requires automatic reversal
under clearly established federal law, as a jurisdictional
error of law.  The Fifth Circuit in **United States v. Onick,
889 F.3d 1425** states... To convict one for possession with
the intent to distribute, the jury had to find the defendant
(1) possessed illegal drugs; (2) knowingly, and (3) intended
to distribute those drugs.  **United States v. Galvan-Garcia,
872 F.2d 638, 640 (5th Cir.1989).**  Possession may be actual
or constructive and may be proven by direct or circumstantial
evidence.  **United States v. Gardea Carrasco, 830 F.2d 41,
45 (5th Cir.1987).**  Constructive ownership is defined as
ownership, dominion, or control over illegal or dominion
over the premises where illegal drugs are found.  **United
States v. Thompson, 700 F.3d 944, 952 (5th Cir.1983).  Also
see Unites States v. Shabani, 513 U.S. 10, 130 L.Ed. SD 225,
115 S.Ct. 382 (1994).**  The common law definition, as adopted
by congress, does not make the doing of any act other than
the act of conspiring a condition of liability.  **Nash v.
United States, 229 U.S. 373, 378, 57 L.Ed. 1232, 33 S.Ct.
780.**

Evidence was insufficient to convict defendant of conspiracy
to distribute drugs, for reasons that the government failed
to present evidence that petitioner actually possessed, or
entered into an agreement to possess or had dominion or control
over the substances charged.  There was no evidence presented
that petitioner entered into an agreement to violate the
narcotics conspiracy law under 21 U.S.C. §846.

The conduct of petitioner was that she drew a map alleged
to have been used during the transportation of drugs, which
witnesses testify was little or of no use, either being described
as "confusing" or "half a map" or similar to the map that
was actually presented as evidence.  (See interview with
Rosa Sanchez conducted by SA Conan Becknell, Assistant United
States Attorney Jeff Parras and SA Will Kimbell, dated on
August 15, 2007.  Page 6 of 8 line 4).  Also (see trial testimony
from Omar Sandoval, Jury Trial Volume 2, page 37 lines 12,14
and 16.  Where counsel also fails to object to continual
leading questions by prosecutor, example... line 13).  Petitioners
conduct did not extend to the distribution or profit of drug
sells.  There was no agreement to be inferred that petitioner
distributed, possessed or sold drugs.  Her agreement had
it's own end and each constitutes an end in itself.  Participation
was separate and apart from the distribution of controlled
substances, defendant drew one of several maps, she never
shared a stake in the success of the distribution of drugs.
It would be an exaggeration to describe her part as an organizer/
recruiter.  On the contrary, considering this ongoing conspiracy
dating back to 2001 and according to investigating reports,
1991, and petitioner being placed in it from April 05' to
July 05', only a few short months.  Defendant was not dependant
on any other persons subsequent success in distribution of
drugs and had no commitment to others.  Record does not reflect
that Munoz was sole source in regards to drawing a map or
one in a hundred.  A hand drawn map verses one that could
be more accurate or informative considering todays technology
and G.P.S devices.  During interrogation she was presented
with several different maps.  Defendant truthfully admits
to drawing a map and this was the evidence that was used
against her.  Absent this statement, the government had no
evidence, no agreement was ever proven to have been established
in her trial to distribute or possess drugs.

### I(B)
### Ineffective Assistance of Counsel

Counsel failed to effectively cross examine the witnesses, which would have established their lack of credibility as a government witness, although the government informed the jury of a possible sentence reduction for their testimony, counsel failed to pursue the issue, denying defendant her right to cross examine under the Confrontation Clause. The government misled the jury by alleging that it was up to the judge to grant leniency, rather than stating that it was part of the witnesses plea agreement, that the government would recommend a lighter sentence to the court for their cooperation. The testimony's credibility as a witness is an important issue in a case and defendants counsel failed to utilize methods of impeachment... the witnesses motivation to lie and whether they were offered an incentive to cooperate by the government, which could have amounted to coercion to provide testimony in hopes of receiving a lighter sentence. (See Jury Trial Volume 1, page 81, lines 4-16). This Circuit in United States v. Mason-Smith (2002) determined it to be false information provided to the jury, an error of fundamental defect.

It is well settled precedents that a prosecutor is prohibited from knowingly presenting false testimony to the jury, by alleging that the witness's leniency was up to the judge, when it is the government and not the court who decides if the witness has provided truthful testimony deserving leniency under 5K1. This rule is more so enforced where the witness enters into a plea agreement to cooperate with the government to provide testimony in exchange for leniency. See Jury trial Volume 1, page 81, line 25 and page 82, lines 1-2. Also see **Giglio v. United States, 405 US 150, 153 (1972); Napue v. Illinois, 360 US 264, 271 (1959).**

Only the government, not the judge can recommend a 5K1 rduction. **United States v. Mason-Smith, No. 01-30538 (5th Cir. 2002).** The government permitted Sanchez to state to the jury, that it was up to the judge if she would get a lighter sentence, violated clearly established law defined by the Supreme Court and this circuit, precedent of Mason-Smith.The scope of criminal activity jointly undertaken by the defendant is not necessarily the same as the scope of the entire conspiracy. Finding one guilty of conspiracy requires a separate finding of one guilty of relevant conduct according to the Fifth Circuit in **Puig-Infante, 19 F.3d,** There are two required findings, (1) the scope of the agreement; and (2) a part of the jointly undertaken criminal activity. Absent an independent finding of both criteria's, the petitioner cannot be attributed the conduct of others for the sales and distribution of controlled substances. All testimony relevant to the petitioner's guilt at trial, does not support the application of relevant conduct finding to upward adjust the sentence under USSG 1B1.3, Stinson strictly requires of the lower courts to follow the close requirements of the commentary note that functions to interpret and explain, to ensure a guideline application is not wrongfully applied. The scope of the jointly undertaken criminal activity for which a defendant is held responsible encompasses the specific conduct and objectives embraced by the defendant's agreement. USSG §1B1.3 (a)(1)(b) **US v. PUMA, 937 F.2d 151, 160 (5th Cir.).** Reasonable foreseeability does not automatically follow from proof of participation in the conspiracy.

4

I(C)

Ineffective Assistance of Counsel

Counsel failed to do a thorough Pretrial investigation, which is vital to an effective assistance of counsel. Had he covered every area in investigation, he could have advised defendant of her right to file a motion to suppress evidence under the exclusionary rule (Fed.R.Evid. 104(a), 403) (Fed.R.Crim P. 12(d)). In regards to involuntary statements which were compelled and elicited by government agents. Volume 1: Ch.7 ¶7.08 Motion to Suppress Evidence [6] Tactics & Techniques at pretrial hearing.

Here the governments case depended almost entirely upon involuntary statements, without it they very well could have never indicted defendant with no evidence to carry the case to the grand jury. Immunity from the use of compelled self incriminating statements affords the protection required by the Fifth Amendment, it prohibits prosecutors authority from using the compelled testimony in any respect.

A successful motion to suppress would have rendered evidence inadmissible, as a result of involuntary statements that were obtained by police trickery and mental coercion. Counsel was ineffective in failing to file such a motion.

On or about 4/30/2007 three government agents came to the defendants place of residence and asked to speak with her. Upon inviting them into her home, they responded that they would rather go elsewhere to talk. At the time petitioner had just given birth two months prior, she tried to take her baby with her but they asked if she could get some one to look after her. Petitioner's sister in-law was present and agreed to take care of her. They assured petitioner and her husband that the reason they were their to speak

with her had nothing to do with her but that they only wanted
to speak with her regarding issues that did not pertain to
her.  They asked petitioner if she would ride with them in
their vehicle and petitioner agreed.  Her husband followed
in his vehicle.  During the ride they continued to assure
petitioner that their motives did not have anything to do
with her but hoped she could help with other unresolved issues.
They drove down town to the police station and took petitioner
through the back access of the building and into a small
room with no windows.  There were two other agents that she
was aware of who were present waiting on their arrival.

Factors relating to her mental condition was her state
of mind.  She did have fright and nervousness and did feel
intimidated.  Petitioner had an overwhelming fear relating
to her new born baby and unborn child, to protect them and
prevent them from possible separation from their mother and
felt as if she had to speak to them.

Factors relating to petitioner's physical condition
was her general health.  Petitioner had just given birth
on 2/23/2007 and at the time of interrogation she was one
month pregnant.

The personnel involved in the interrogation procedure
were 4-5 D.E.A, whom did display their authority, although
not in uniform, they had badges and guns.  The place where
the interrogation occurred was at the police headquarters,
in a small room with no windows, isolated from other people.

The method of interrogation was the use of the "good
guy - bad guy" scenario.  (See Jury Trial Volume 3, page
4, lines 20-25 & page 5 lines 1-5).

Objectionable police tactics were the use of lies, assuring the defendant that what they wanted to speak to her about did not pertain to her; the use of threats, making statements like 'maybe defendant would tell them what she knew when she was in an orange jump suit' and how they 'thought she would be willing to help herself out since she just had a baby'.  Although they made every effort to assure her they had no motives concerning her, the end result was them implying extreme and overwhelming pressure on her.

Petitioner's husband followed her to the police department where he was denied access to her upon numerous request, he waited over an hour for her.  Police interrogation, by it's very nature, isolated and pressured the individual. They exacted a heavy toll on the individuals liberty and trades on the weakness of the individual.

Before or during interrogation she was asked to sign a paper, as she started to read it, one agent explained to her that it simply stated that she agreed to speak with them. She did sign and in all actuality it was her Miranda rights being waived (see actual interrogation in care of United States Attorney, John S. Klassen and Jury Trial  Volume 2, page 260, lines 16-20).  Petitioner was not aware of this nor did she perceive that.  She was not adequately and effectively appraised of her rights nor did they honor her privilege to exercise those rights, she was not fully advised and police agents did not carefully or thoroughly administer her miranda warnings, thus rendering her statements inadmissible (65 L.Ed. 2d 1306).  It is part of a law enforcement officers duty to make every effort to attempt to guarantee a persons constitutional rights.  Their is a link between the coercive conduct if the police, which deprived her of the knowledge essential to be able to understand the nature of her rights and the consequences of abandoning them.

Counsel never challenged the voluntariness of defendants statements prior to this point, (trial or appeal).  Under traditional voluntariness test and these individual facts to consider, defendants statements were the product of coercion and thus inadmissible, such conduct truly violates the accused right to remain silent, it's ambient is broader than miranda, which involves only prophylactic rules attempting to guarantee constitutional rights.  Had counsel sought to suppress evidence consisting of statements that were involuntarily made to law enforcement officers, defendant would have more than likely been acquitted.  The government bares both the burden of proof and the burden of going forward.

The Fifth Amendment right against self incrimination and the Due Process Clause of the Fourteenth Amendment are two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence.  **(See, e.g., Bram v. United States, 168 US 532, 542, 42, L.Ed. 568, 18, S.Ct. 183).**  Stating that the voluntariness test is controlled by that portion of the fifth amendment... commanding that no person shall be compelled in any criminal case to be a witness against himself.  **(Brown v. Mississippi, 297 US 278, 80 L.Ed. 682, 56 S.Ct. 461).**  Reversing a criminal conviction under the Due Process Clause because it was based on a confession obtained by physical coercion, in this case, mental coercion. The Due Process test takes into consideration 'the totality of all the surrounding circumstances of the accused and the details of the interrogation'.  **Ibid. see also Haynes, supra, at 513, 10 L.Ed. 2d 513, 83, S.Ct. 1336; Gallegos v. Colorado 370 US 49, 55, 8 L.Ed. 2d 325, 82 S.Ct. 1209.**  If all attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant.  **(Malinski**

v. **New York, 324 US 401, 404, 89, L.Ed. 1029, 65 S.Ct. 781).**

The Due Process Clause requires suppression of video tape interview in which a defendant answered questions relating to series of burglaries committed by him, on express promise by interviewing officer that video tape would not be used against defendant in any criminal proceeding, since (1) office's reliance upon promise implicated constitutional rights of defendant and (2) no other remedy short of enforcement of promise would secure fundamental fairness to defendant.  **People v. Fisher (1983, Colo). 657 P.2d 922.**

A defendants statement to police officer while being driven to police headquarters and prior to miranda warnings that he had thrown away gun while running from police was voluntary since it did not come in response to interrogation where police officer merely asked routine identification questions necessary for booking purposes.  **United States v. Lawrence (1992, CA8 Minn) 952 F.2d 1034, cert. den. (1992) 503 US 1011, 118 L.Ed. 2d 434, 112 S.Ct. 1777.**

Under **Volume 1: §1.01 Criminal Procedure,** sets the rules for discovering violations of this criminal statute -- e.g., police may not entrap suspects, subject them to unreasonable searches and seizures or coerce confessions.  If police violate these or other procedural rules, various procedural consequences may arise, such as exclusion of evidence at trial or dismissal of the charge.  **(See ¶8.04 Fourth Amendment Attack) and (Miranda v. Arizona, Dunaway v. New York).** Also **Evidence §681.5 admissibility inculpatory statements Sixth Amendment violation and Fifth Amendment."fruits" analysis.**

Was counsel ineffective for not raising in the District Court and on Direct Appeal, the D.E.A. agents use of trickery to obtain consent from petitioner, to waive her right to Miranda and speak, unbeknownst that her statement would be used to incriminate her?

Was petitioner's Fourth Amendment right violated to require suppression of the statement, where agents ask of her to talk, then sign a consent to talk, alleging the information sought was not against her, not to worry that she was not in trouble, but later used to incriminate her?  (See Rules 104, 111, 112, 102) (Difference between Miranda a voluntariness requirement), and (trickery III US v. Bell, 367 F.3d 452). (5th Cir.).

March 3, 2010.  08-1229 Flordia v. Rigterink, judgement vacated.  Interrogation - Right to counsel - **Custody**
Although a defendant voluntarily appeared at police station in hopes of being eliminated as suspect, officer's confronting him with fact that his fingerprints were found in blood left at murder scene, transformed consensual interview into custodial interrogation for purposes of **Miranda v. Arizona, 384 US 436 (1996).**  because miranda advisory that interrogators provided was recently found defective in **State v. Powell, 998 998 So. 2d 531(2008), for failure to advise defendant** that he had right to have counsel present during interrogation, videotape of interrogation should have been suppressed at defendant's trial, defendant is entitled to new trial.

I(D)

Ineffective Assistance of Counsel

Counsel failed to object to Governments motion
to dismiss paragraphs B. Five (5) kilograms or more
of a mixture or substance containing a detectable amount
of cocaine, a schedule II substance, and C. Fifty (50)
grams or more of a mixture or substance containing a
detectable amount of cocaine base "crack", a schedule
II substance, in the indictment.  (See Voir Dire and
Pretrial transcripts page.7, lines 10-24 and page.8,
lines, 8-12)(also sentencing transcript page.9, lines
6-8).

Procedure 7(d) provides that the court may strike
surplusage upon defendants motion, the defendant made
no such motion.  The authority of the court to strike
such surplusage is limited to doing so on the defendants
motion, in the light view that the guarantee of indictment
by a grand jury implied that an indictment might not
be amended.  It has been indicated that a defendant,
by making such a motion, would, however, waive the defendants
rights in this respect.  Striking out of parts of an
indictment invalidated the whole of the indictment,
for a court cannot speculate as to whether the grand
jury had meant for any remaining offense to stand independently,
even if the remaining offense clearly was included in
the original text.  A court cannot strike words or allegations
essential to the charges, such as language which is
part of the statute at issue. (CH.6A Sufficiency of
Indictments §6A.04 Technical Difficulties [2] Surplusage).
The use of the word 'surplusge' however, merely states
the problem.  There have been two approaches to it's
solution.  That of **Ex Parte Bain (155 F.Supp.253)** that

since, under the fifth amendment, a defendant can be
tried only upon an indictment of the grand jury, if
any is eliminated how can it be told that the reduced
indictment would have been presented?  In a sense this
is an impossible question to answer affirmatively, no
matter how slight the change, all that now appears to
remain of Ex Parte Bain is that even surplusage in an
indictment may not be struck, **USV. Stepp, D.C.D. Colo.,
144 F.Supp. 826, absent motion by the defendant or his
consent, USV. Krepper, 3 Cir., 159 F.2d 958, 330 U.S.
824, 67 S.Ct. 865, 91 L.Ed. 1275, Semble but surplusage
may be disregarded, or withdrawn by the court from the
"jurys" consideration.**  Ford v. US, 273 US 593, 47 S.Ct.
531, 71 L.Ed. 793.

The government is proscribed by the sixth amendment
from altering indictment on it's own volition.  A party
can only be tried upon an indictment as found by the
grand jury and especially upon all it's language found
in the charging part of that instrument..  It is reversible
error per se to amend an indictment with out resubmitting
to the grand jury  It does not lie within the providence
of a court to change the charging part of an indictment
to suit it's own notions of what ought to have been,
for, if it be once held that changes can be made by
the consent or the order of the court in the body of
the indictment as presented by the grand jury, and the
prisoner can be called upon to answer to the indictment
as thus changed, the restriction which the constitution
places upon the power of the court, in regard to the
prerequisite of an indictment, in reality no longer
exists. **(Ex Parte Bain, Supra 121 US at 10, 13).**  An
indictment is not sufficient if it merely tracks the
generic language of the statute, it must descend to
particulars.

The Fifth Amendment to have the Grand Jury make
the changes on it's own judgement is a substantial right
which cannot be taken away, with or without court amendment.
There are substantial safeguards an indictment is designed
to provide to a criminal defendant.  Once the grand
Jury hands down the indictment, nobody, neither prosecutor,
nor judge, nor jury may amend it. The place for such
an amendment is before the grand jury, not in the court
room.  The instrument as thus changed, is no longer
the indictment of the Grand Jury which presented it.
The error seriously affects the fairness, integrity
and public reputation of judicial proceedings.

The charges of actual indictment under Vio:21 U.S.C.
§846, conspiracy to distribute controlled substances,
Count One A.1,000 kilograms or more of a mixture or
substance containing a detectable amount of marijuana,
a schedule I controlled substance, B.Five (5) kilograms
or more of a mixture or substance containing a detectable
amount of cocaine, a schedule II controlled subtance,
"and" C. Fifty (50) grams or more of a mixture or substance
containing a detectable amount of cocaine base "crack",
a schedule II controlled substance, all different elements
of offense, which misled defendant to her prejudice
and her substantial rights were effected by the governments
error in citation, indicating the possible sentence
that could have been imposed upon defendant, which was
her reasoning for exercising her right to a jury trial.

Amending the indictment to suit their own notions,
by striking out paragraphs B and C and proceeding to
try the prisoner upon the indictment as thus changed
relieved them of the requirement to meet the burden
of proof, and undermined the defendants trial strategy
and her ability to evaluate whether to plead guilty
or not,and denying her credit for acceptance of responsibility
which would have lowered defendants offense level and sentence.

See Voir Dire & Pretrial page 7 lines 16-18 where government
moves to dismiss and line 24 where counsel fails to
object, please note that it was not until this point
that government removed this portion of indictment,
see sentencing transcripts page 9, lines 7-8.  Counsel
for defendant only verbally explained plea agreement,
he never showed her anything in writing, his advice
to her was that she was not guaranteed the possible
sentence of plea agreement, that upon entering a plea
of guilt she could be charged with the whole indictment.

Counsels errors in failing to object to improper
amendment of the indictment and his failure to move
for dismissal  caused defendant to be tried on an indictment
that was not found by the grand jury and forced defendant
to trial, when in fact she could have entered into a
plea agreement.

Without evidence and allegations as to the dissmissed
portions of the indictment, the grand jury most likely
would not have found probable cause to indict defendant
on the element that remained in the indictment.  **Indictment,
Informations, Complaint §34 & 29.**

The court nor the prosecutor can determine what
was in the minds of the grand jury, counsel further
failed to object to the misuse of **FR.Cr.P. Rule 7(d)**
by the government in making the motion to dismiss certain
elements of the offense.

Counsel failed to raise these issues on direct
appeal, prejudicing defendant's rights to have the issue
addressed by the court of Appeals, and causing defendant
to remain convicted on an invalid indictment.  These
issues relating to this unlawful amendment of the indictment
are jurisdictional and may be raised at any time, according
to principles   long settled in the U.S. Supreme Court,
the prisoner who stands sentenced to the penitentiary

14

on such trial, is entitled to their discharge by writ
of habeas corpus. **George M. Bain, [30 L.Ed. 849].** Chief
Justice Shaw stated "it is a well settled rule of law
that the statute respecting amendments does not extend
to indictments; that a defective indictment bad on demurrer
must be held insufficient upon a motion in arrest of
judgement. (**Commonwealth v. Child, 13 Pick. 200**).

Counsel was ineffective on failure to move for
arrest of judgement after defendant was tried on an
invalid indictment.

Permissible amendments are those that do not alter
the charges against the accused. **Muncy, 289 F.at 785.**

**Withdrawal of consideration one count of an indictment
while submitting othersfor it's verdict, sustained in
Dealy v. United States, 152 US 539, 542 [38 L.Ed. 545,
14 S.Ct 680], would be fatal error. United States v.
Ballard, 322 US, at 90-91, 88 L.Ed. 1148, 64 S.Ct. 882
(dessenting).**

A Defendant appealed from a judgement of the United
States District Court for the Northern District of Mississippi,
which convicted and sentenced her on felony charges
that the court instructed the jury were lesser included
offenses to those brought by the United States in a
grand jury indictment for possession of cocaine in violation
of 21 U.S.C.S. §844. The court may not instruct the
jury that a crime is a lesser included offense to the
one charged by the United States in a grand jury indictment
against defendant unless the crime contained the same
elements as the one charged. (Schedule I, II, III, IV,
V, & VI are all different elements). **United States v. Deisch
20F.3d 139 (1994) and Schmuck v. United States 489 US 705,
716, 109 S.Ct. 1443, 1450-5I, 103 L.Ed 2d 734.**

An amendment of the indictment occurs when the charging
terms of the indictment are altered, either literally
or in effect by the prosecutor or court after the grand
jury has passed upon them.

US v. Miller 85 L.Ed 2d 99, 471 US.  A court may
not amend an indictment by striking out words as surplusage
which may have formed the basis for one or more of the
grand jurors to vote to indict. Ex Parte Bain, 121 US
1, 7 S.Ct. 781, 30 L.Ed. 849.

Deletion modified essential elements of charges
offense and factual basis on indictment.  Fed.Rules
Evid. Ser. 329, 114 ALR Fed. 807.

Jury instruction can function as constructive amendment
to indictment if it modifies essential elements of offense
charged in indictment and, when indictment is modified
in this manner defendant's Fifth Amendment right to
be charged by grand jury has been violated, resulting
in reversible error.  US v. Collins, 350 F.3d 773.

A variance occurs when the charging terms of the indictment
are left unaltered, but the evidence offered at trial proves
facts materially different from those alleged in the indictment.
Id. quoting (Gaither v. United States, 413 F.2d 1061, 1071,
134 US App. D.C. 154.

I(E)

Ineffective Assistance of Counsel

Whether a material variance occurred when evidence at trial varied from investigating reports obtained from cooperating witnesses, which implicate that defendant received loads of marijuana, had dominion over drugs and had authority to pay witnesses. These allegations were within investigating report, however, they were never brought up at trial, or proven. Also other allegations that defendant recruited all witnesses, and every witness other than Joshua Jovan Martinez, testify that she did not recruit them, also testifying that they never made certain statements and allegations.

See Report of Investigation regarding Joshua Martinez, page 2 paragraph 2. Martinez states that David Sanchez recruited his sisters, Rosa and Rachel Sanchez, paragraph 3 states that he himself paid a person by the name of Chris Lara, at trial their is no mention made of these incidents, trial lawyer failed in this area. Paragraph 4 Martinez further states that he and defendant transported drugs and stored them at "Jonny Longoria's" residence, however, while testifying he tells the court hat he never said anything to this extent. (See Jury Trial Volume 2 page 118 lines 4-8, page 119 lines 6-8). Paragraph 5 of Investigating Report implicates Munoz as a person who has given "drug proceeds" to her husband and he accepts. Page 1 of 4 debriefing of Joshua Martinez on 9-8-05, states that Munoz was to pay him in marijuana upon return to Midland. (See Jury Trial Volume 2, page 116, lines 1-5).

See Report of Investigation regarding Rosa Sanchez, page 7 of 8, paragraph 6, states that they would call Munoz and she would "instruct" them, receive drugs and pay them. Witnesses testimony contradicts this misleading information. (See Jury Trial Volume 1).

Interview conducted with Anaya Sanchez on August 15,
2007 only two months prior to defendants trial, page 4 of
8, paragraph 5 states she spoke with Munoz before incident,
regarding transportation of marijuana and that Munoz spoke
about transporting herself, says she saw Munoz in same vehicle
she was caught in.  (See Jury Trial Volume 1 page 141, lines
1-21).  NOte that the vehicle Rosa Sanchez states that she
does a dry run with Crystal about two days prior, then changes
her statement and says it is an actual load, is in a van...
Anaya Sanchez states that it is the same vehicle she and
her sister are caught in, which was a truck.

Interview with Martinez also alleges that Munoz was
paid $12,000 on two occasions for transporting drugs.  (See
page 3, paragraph 7 of report of investigation).

Statements accusatory of another taken by law enforcement
personnel with a view to prosecution should generally be
regarded as inadmissible under the confrontation clause because
they are inherently unreliable.  (See **US v. Ortiz 993 F.2d
204 (10th)** stating... that unreliable allegations shall not
be considered).

Were these investigating reports presented as evidence
to indict defendant, all implicating conspiracy to possess
with intent to distribute, however, at trial are never brought
up by prosecutor and counsel failed to present variance

I(G)

Ineffective Assistance of Counsel

Counsel failed to challenge of governments denial of acceptance of responsibility.  Defendant truthfully admitted to drawing a map, she voluntarily withdrew and terminated criminal conduct and associations.  Defendant was not denying accepting responsibility, but was denying the indictment as originally charged.  Although this adjustment is not intended to apply to a defendant who puts the government to it's burden of proof at trial, by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.  Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional rights to a trial.  In this case for example where defendant goes to trial to assert and present issues that do not relate to factual guilt.  (E.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).  (USSG 3E1.1) US v. Lobato.

Federal Rules and Criminal Procedure 11(f) states that a trial court cannot enter a judgement on a plea of guilt unless it is satisfied there is a factual basis for the plea.  If the court were to accept a plea of guilt it would have violated the intended underlying purpose of this rule.  Defendants conduct did not actually fall within the nature of the charged indictment.

I(H)

Ineffective Assistance of Counsel

Whether a material variance occurred when the evidence obtained from interrogation, varied from the information adduced against defendant to obtain indictment?

Report of investigation in regards to Crystal Munoz's interview with D.E.A./M.R.O, revealing the many fabricated statements placed in investigating report that defendant never said... page 2, paragraph 3, Defendant never stated she was in Ojinaga Mexico only "one" time.  She never stated that Aguirre fled from justice, or that she was not aware of why. or that she crossed into O.J. Mexico only two times, ~~then~~ recanting, saying four times.  See page 3 of 8 in regards to a residence owned by "the Longoria family"... Munoz only stated that she stayed with an elderly woman with that last name.  As to acquaintance with "DTO" and being able to better identify members of the "Longoria DTO", if agents provide her with photos, agents began to interrogate defendant concerning whether or not she knew certain people by name, defendant said if she saw the face she could say if she ever 'met' the person, but did not personally know the person(s).  She never implicated any person as a "DTO".  She never stated that Aguirre asked her to draw a map to "circumvent the border check point at Marathon Texas, page 4 paragraph 5, she never stated David Sanchez as being involved with "DTO" only that he introduced her to Aguirre, because this was the only way defendant knew how to prove that the person existed.  She never states that David Sanchez had permission to travel on ranch roads nor did she ever make any remarks of this fashion concerning David Sanchez.

Did the material produced against defendant prejudice her?  **(See The Bank of Nova Scotia v. US 487 US 250, 101 L.Ed 2d 228, 108, S.Ct. 2369).**  Also note the variance in defendants PSR pertaining to marijuana amount verses trial.

Page 5 paragraphs 5 & 6, Munoz never states that her husband
Ricky Hinojos Munoz had been arrested on a drug charge, the
reason for him being incarcerated had nothing to do with
drugs.  She never identified/had knowledge that Longoria
DTO was utilizing white Ford vans to transport ton quantities
of marijuana to Odessa, Texas, only stating that she saw
a van similar to one shown to her in a picture.

All these statements were fabrications of the actual
interrogation of Crystal Munoz, investigating report was
evidence produced to indict petitioner.  This truly effects
the integrity, fairness and public reputation of judicial
procedure, please see actual interrogation with Crystal Munoz
in care of United States District Attorney.  John S. Klassen.

Counsel failed to present to the jury and the court
the variance between defendants statements and the actual
report regarding those statements while cross examining interviewing
officers.

Wherefore petitioner prays for this honorable court
to grant her §2255 motion, reverse her conviction and dissmis
the indictment.


Respectfully submitted,


X _____

Crystal Munoz #79319-180
Federal Medical Center, Carswell
P.O. Box 27137
Fortworth, Texas  76127

21

Certificate of Service

I hereby certify that I have served a copy of the foregoing
upon the Government by mailing a copy of same, postage prepaid
to  US Attorneys Office 400 W.Illinois Suit 1200 Midland,Tx. 79701-2548
this 29th day of April, 2010.

Crystal Munoz